## Richmond.

POSTAL TELEGRAPH CABLE CO. v. N. & W. R. R. Co.

March 24th, 1892.

1. INJUNCTION—*Contempt—Disclaimer.*—Where defendant's employees, without orders, drove across complainant's railroad after award of injunction to restrain trespass on its road-way, and defendant disclaimed all evil intent;

HELD:

Error to impose a fine for the contempt.

Appeal from certain orders of the chancery court of city of Richmond, made in a certain proceeding therein, in the suit of the Norfolk and Western Railroad Company against the appellant, the Postal Telegraph Cable Company. Opinion states the case.

*J. S. Parrish, Edgar Allen* and *E. C. Burks,* for appellants.

*Robert Stiles, A. L. Holladay* and *George S. Bernard,* for appellee.

LACY, J., delivered the opinion of the court.

The bill was filed in this case to enjoin the telegraph company from constructing its telegraph line upon the road-bed of the Norfolk and Western Railroad Company by the said railroad company, but it appears to have been prosecuted by the rival telegraph line already established on the road-way of the

said railroad. This is obvious. It was an injunction suit brought in the chancery court of the city of Richmond, whose jurisdiction is in the city of Richmond only, to enjoin an alleged trespass in six counties outside of the city of Richmond; the ground of the supposed jurisdiction of the chancery court being that the principal office of the telegraph company in the state of Virginia is in the city of Richmond. After the injunction was awarded, some of the employees of the telegraph company drove across the railroad in a wagon by a private road-way, the usual route of travel along the country being intercepted by the destruction of the bridge over the stream which there flowed, by a freshet in the stream, it being at that time the usual and only mode of travel, and removed some poles which had been dropped upon and near the edge of the road-bed of the railroad, and did some other trivial acts. The telegraph company answered, and disclaimed the acts of its servants, as being without its orders, and the company and the said servants purged themselves of the contempt by disclaimer. But the court discharged the rules against the servants and employees, and imposed a fine for the same, as merely technical, of $50 and costs, against the company, notwithstanding the disclaimer and the entire absence of any intention on the part of the company to disregard the court's order. The telegraph company thereupon appealed to this court.

The action of the chancery court in imposing a fine for contempt of court upon the telegraph company, under the circumstances of this case, is clearly and plainly erroneous. The case of *Com.* v. *Dandridge*, 2 Va. Cas. 441, to which we are referred, was a case of gross rudeness to a judge in relation to his judicial action, offered to a judge as he entered the court-room to open court. And in that case, when the offending party refused to purge himself of his contempt, one of the judges (Judge Parker) said it was the constant practice to discharge the defendant who, in cases of this kind, denies any evil intention. It is said in the opinion of Dade, J.: "In this country

we know no privileges but such as exist for the public good. * * * Courts, their officers, and process, are shielded from invasion and insult * * * solely for the purpose of giving them their due weight and authority, and to enable those who administer them to discharge their functions with impartiality, fidelity and effect." This is the true test of every privilege not granted by statute, and is the spirit of every one which is so secured. It was said in *Wells* v. *Com.*, 21 Gratt. 509, upon this subject: " To vindicate his conduct, it is not necessary to be shown that he was right in his opinions. But it is necessary to be shown that he was acting in good faith for what he believed to be the interest of his client, and not from disrespect to the court. We think his affidavit clears him of the contempt, and that must be taken as true. If a party can clear himself upon oath he is discharged, but, if perjured, may be prosecuted for the perjury." 4 Bl. Comm. 287, 288. " In the courts of law the admission of the party to purge himself by oath is more favorable to his liberty, though perhaps not less dangerous to his conscience; for if he clears himself by his answers the complaint is totally dismissed." Where it is clear from the character of the alleged act and from the answer of the party that there was no intention to disregard the injunction, he ought not to be adjudged guilty of contempt. The idea of a technical contempt, committed by accident or misadventure, cannot be supported, under the authorities, where the intention—the *malo animo*—is wholly wanting. And we are of opinion to reverse and annul the order appealed from in this case adjudging the telegraph company to pay a fine of $50 and costs, and directing that a *fieri facias* be issued therefor, rendered on the 24th day of November, 1889.

ORDER REVERSED.